# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONALD BOWIE, individually and, Derivatively as a Member on behalf of AUTOMAX USED CARS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMAX USED CARS, LLC and MARIO FAIRCHILD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. CIV-21-393-D<br>)<br>)<br>)<br>)<br>)<br>) |

## O R D E R

Before the Court is Defendants' Motion to Dismiss [Doc. No. 6], filed pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1367. The Motion challenges the sufficiency of the Complaint to state a race discrimination claim under 42 U.S.C. § 1981 and seeks the dismissal of Plaintiff's state law claims as outside the scope of supplemental jurisdiction under 28 U.S.C. § 1367(a) or, alternatively, subject to dismissal under 28 U.S.C. § 1367(c)(2) or (3). Plaintiff has filed a timely response [Doc. No. 16], and Defendants have replied [Doc. No. 17]. Thus, the Motion is fully briefed and ripe for decision.

### Background

Plaintiff Ronald Bowie is an African American male, a former employee of Defendant Automax Used Cars, LLC ("Automax"), and a part-owner of the company. Plaintiff alleges he "is a 'Class B Member' of Automax" who has owned 20 "Class B Shares" since 2007. *See* Compl. ¶¶ 29-30. Defendant Mario Fairchild ("Fairchild") is the

majority owner of Automax who holds 64 "Class A Shares" and 491 "Class B Shares" and "was Automax's sole Manager pursuant to the Operating Agreement." *Id*. ¶ 25.

Plaintiff claims Automax discriminated against him based on race by paying him less than Caucasian employees and terminating his employment, for which he seeks equitable relief and damages under 42 U.S.C. § 1981. Plaintiff also brings state law claims based on his ownership interest in Automax: a claim against Automax for access to the company's books and records under Okla. Stat. tit. 18, § 2021(B); and claims against Fairchild for breach of fiduciary duty and breach of Automax's operating agreement. Plaintiff also asserts tort claims against Fairchild of assault, battery, and defamation. Defendants move for dismissal on the grounds that the Complaint fails to state a § 1981 claim and the Court should not exercise supplemental jurisdiction over the state law claims.

**Standard of Decision**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing plausibility, the Court first disregards conclusory allegations and "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. "[W]here the well-pleaded facts do not permit the court to infer more

2

than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## Analysis

### A. Race Discrimination Under § 1981

Automax seeks dismissal of Plaintiff's § 1981 action based on his alleged failure to adequately plead the causation element of a § 1981 claim under *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020), which adopted a "but for" causation standard. Defendant argues that Plaintiff's factual allegations show the challenged employment decisions were based on factors other than race and thus defeat a claim requiring proof that race was a "but-for" cause. *See id*. at 1019 ("To prevail [under § 1981], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.").

Upon consideration, the Court finds that Automax's argument overstates the holding of *Comcast*; "but for" causation does not require that race be the sole reason for an adverse employment action. *See Jones v. Okla. City Pub. Sch*., 617 F.3d 1273, 1277 (10th Cir. 2010) ("but for" causation for age discrimination claim "does not require plaintiffs to show that age was the sole motivating factor in the employment decision"). As explained by the Supreme Court:

> [But-for causation] is established whenever a particular outcome would not have happened 'but for' the purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.
>
> This can be a sweeping standard. Often, events have multiple but-for causes. So, for example, if a car accident occurred both because the

>defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision. When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020) (citations omitted) (discussing Title VII's but-for causation standard as distinguished from the "motivating factor" test adopted in 1991). Thus, the Court rejects Automax's argument that the existence of other causes for Plaintiff's termination or a pay disparity necessarily prevents him from stating a § 1981 discrimination claim.

Turning to the factual allegations of the Complaint – which are accepted as true and viewed in the light most favorable to Plaintiff as required by Rule 12(b)(6) – the Court finds minimally sufficient facts to state a plausible § 1981 claim. Plaintiff states he was hired as the general sales manager of Automax in 1998. Throughout his tenure with the company, Plaintiff attended car auctions and purchased used cars for all Automax stores, and during certain periods of time, he also acted as a general manager of certain poorly performing Automax dealerships. *See* Compl. ¶¶ 11-12. However, Fairchild became angry with Plaintiff in September 2018 and limited Plaintiff's role after that time to attending auctions and purchasing cars. For the first time, Plaintiff did not receive a salary from Automax; instead, his compensation was based on used car purchases and resales. *Id.* ¶ 13.

Regarding the adverse employment actions at issue, Plaintiff alleges that he received lower pay than Caucasians in general manager positions, that he was promised a greater ownership interest that was never conveyed, and that Caucasian employees (two of whom

4

are identified by name) "were awarded greater ownership interests and/or the ownership interest that was promised but never delivered to [Plaintiff]." *Id*. ¶ 14. Although not entirely clear, the Court understands from these allegations that Plaintiff is comparing his pay as general manager to the pay of Caucasian general managers prior to September 2018. Plaintiff alleges that in January 2021 Fairchild falsely accused him of stealing company funds and terminated Plaintiff's remaining employment relationship with Automax. The termination occurred during a meeting in which Fairfield allegedly became verbally and physically aggressive – issuing threats and insults, throwing an object that struck Plaintiff, and coming toward him with "raise[d] arms/hands as if preparing to strike [Plaintiff]." *Id*. ¶¶ 15-17. Fairchild also allegedly sent several text messages to Plaintiff before terminating him that contained racial epithets, which are quoted in the Complaint. *Id*. ¶¶ 19-20. Plaintiff alleges on information and belief that Fairchild also "often and repeatedly used the N-word in Automax offices," including in reference to Plaintiff. *Id*. ¶ 23. From these facts, Plaintiff claims Fairchild terminated his employment relationship with Automax based on a false allegation of theft that, viewed in the context of Fairchild's "known racist beliefs," was a pretext for race discrimination. *Id*. ¶ 24.

The Tenth Circuit has stated regarding employment discrimination claims that "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *accord Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020); *see Jones*, 617 F.3d at 1278-79 (approving continued application of

5

burden-shifting framework of *McDonnell Douglas* to age discrimination claims governed by a but-for causation standard). A plaintiff establishes a *prima facie* case of discrimination by showing that "(1) the victim belongs to a class protected by [§ 1981], (2) the victim suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). "For the third element, a plaintiff can raise an inference of discrimination by showing differential treatment. For example, it is sufficient to show that the employer treated the plaintiff differently from similarly situated employees who are not part of the plaintiff's protected class." *Id.*; *see Jones*, 617 F.3d at 1279 (substituting for third element, plaintiff was qualified for the position and "was treated less favorably than others not in the protected class").

In this case, the Court finds that the Complaint contains sufficient factual allegations to state a plausible race discrimination claim. Automax challenges only whether Plaintiff has pleaded sufficient facts to satisfy the third element of his § 1981 claim. The allegations of Plaintiff's pleading, which are accepted as true, state facts from which to reasonably infer that Automax's decisions regarding Plaintiff's pay and the termination of his employment were motivated by racial animus and they would not have occurred but for his race. Plaintiff alleges he was paid less than Caucasian employees while working in the same position of general manager at Automax dealerships. Plaintiff alleges he was terminated under circumstances giving rise to an inference of race discrimination in that the decisionmaker manufactured a false reason for the termination and exhibited racial

animus toward African Americans generally and Plaintiff specifically through text messages and workplace comments.[1] The Court rejects Automax's arguments that the text messages sent to Plaintiff did not include racial slurs; referring to Plaintiff as "dirty" and calling him "boy" could be interpreted as referring to his race. *See*, e.g., *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1142 (10th Cir. 2008) (although "boy" is not inherently offensive, "it is a term that has been used to demean African-American men, among others, throughout American history").

For these reasons, the Court finds that the Complaint states a plausible § 1981 claim of employment discrimination by Automax based on Plaintiff's race.

**B.     Supplemental Jurisdiction Under § 1367**

    **1.     Scope of Jurisdiction**

With certain exceptions, "in any action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, . . . includ[ing] claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Defendants contend that Plaintiff's state law claims do not satisfy this standard. Plaintiff argues that the standard is met because there is a "common nucleus" of facts

---

[1] Automax mistakenly relies on cases holding that isolated instances of racial slurs during a term of employment are insufficient to establish a racially hostile work environment. *See* Defs.' Reply Br. at 4-5. Racial slurs used by a decisionmaker may support an inference of a race-based decision. *See EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 489 (10th Cir. 2006).

among all his claims, that is, "the factual allegations underlying [the] separate claims are part of a continuous stream of actions and reactions." *See* Pl.'s Resp. Br. at 9.

"A claim is part of the same case or controversy if it 'derive[s] from a common nucleus of operative fact." *Price v. Wolford*, 608 F.3d 698, 702-03 (10th Cir. 2010) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)); *accord Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004). This standard was met in *Price* for a lien claimant who sought a share of the settlement proceeds of the plaintiff's medical malpractice action because the claim arose out of the same facts as the underlying tort claim. *See Price*, 608 F.3d at 703. In *Estate of Harshman*, the plaintiff brought negligence and wrongful death claims against two defendants – one of which was the federal government – based on a single accident that caused the decedent's injuries. *See Estate of Harshman*, 379 F.3d at 1165.

In this case, Plaintiff makes only a conclusory assertion that all his state law claims arise from the same operative facts as the § 1981 claim. *See* Pl.'s Resp. Br. at 9. An obvious factual connection exists between his race discrimination claim against Automax and his tort claims against Fairchild; the alleged assault, battery, and defamation all occurred in the context of the termination meeting and events. Plaintiff relies on the alleged aggressive conduct and false accusation by Fairchild – the decisionmaker regarding his employment – to show both that the termination was race-based and that intentional torts were committed. Plaintiff does not articulate, however, a factual connection between his race discrimination claim and the state claims based on his ownership interest in Automax.

8

Plaintiff argues in his brief that Fairchild "began taking Plaintiff's ownership value out of Automax . . . in connection with Plaintiff's termination." *Id*. This argument is unsupported by any citation to the record, and the Court's examination of the Complaint reveals no factual allegation to support it. Plaintiff alleges that Fairchild took funds from Automax "in excess of his pro rata share" to pay personal expenses and expenses of his other business entities and that, while Plaintiff did not receive a distribution "within at least the past five (5) years," Fairchild "distributed hundreds of thousands of dollars to himself during this time." *See* Compl. ¶¶ 27-28. There is no apparent connection between the alleged improper ownership distributions occurring since 2016 and Plaintiff's claims of discriminatory pay or termination, and Plaintiff does not identify any relationship. Plaintiff also does not cite any legal authority for bringing claims regarding a business dispute in an employment discrimination case.

Upon consideration, the Court finds that Plaintiff has failed to articulate a factual connection between his § 1981 claim and the state law claims related to his ownership interest in Automax. It appears that Plaintiff's claims against Automax to obtain its business records and against Fairchild to recover allegedly misappropriated funds involve an unrelated business dispute. The Court finds that these state law claims and Plaintiff's § 1981 claim are factually distinct and involve so little evidentiary overlap that there is no common nucleus of operative fact between them.

Therefore, the Court finds that it lacks supplemental jurisdiction over Plaintiff's state law claim against Automax and his common law claims against Fairchild for breach of fiduciary duties owed to other Automax members and breach of its operating agreement.

## 2.    Exceptions to Jurisdiction

The only remaining issue raised by Defendants' Motion is whether the Court should decline to exercise supplemental jurisdiction under § 1367(c)(2).[2] This provision applies where "the claim [brought under supplemental jurisdiction] substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Defendants argue that this case is primarily a business dispute that should be resolved in state court, where other litigation regarding similar disputes are pending between Automax and others. *See* Defs.' Mot. at 2 & n.1; Reply Br. at 6-7. In light of the Court's determination that federal supplemental jurisdiction exists only for Plaintiff's tort claims against Fairchild related to his termination, the Court finds that the predomination issue is moot.

## Conclusion

For these reasons, the Court finds that the Complaint states a plausible claim of race discrimination under § 1981 and the Motion for dismissal of this claim should be denied. The Court also finds that federal supplemental jurisdiction exists over Plaintiff's state law tort claims for assault, battery, and defamation, but that Plaintiff's other state law claims must be dismissed for lack of jurisdiction.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss [Doc. No. 6] is **GRANTED in part** and **DENIED in part**. Counts One, Three and Four of the Complaint asserting state law claims against Defendant Automax Used Cars, LLC and

---

[2] Defendants seek dismissal under § 1367(c)(3) only if Plaintiff's § 1981 claim is dismissed.

against Defendant Mario Fairchild for breach of fiduciary duty and breach of contract are **DISMISSED** without prejudice to refiling in an appropriate forum.

 **IT IS ORDERED** this 1st day of November, 2021.

*[signature]*

TIMOTHY D. DeGIUSTI
Chief United States District Judge